## IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| **JERRY AND DONNA LAQUIERE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **JURY DEMAND** |
| | ) | |
| **NATIONWIDE PROPERTY AND** | ) | **Case No.:** |
| **CASUALTY INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiffs, Jerry and Donna LaQuiere, for their Complaint against the Defendant, Nationwide Property and Casualty Insurance Company, ("Defendant" or "Nationwide"), would respectfully show and allege to the Court as follows:

## GENERAL ALLEGATIONS

1.      Plaintiffs, Jerry and Donna LaQuiere, are residents of Davidson County, Tennessee and own property located at 14087 Old Hickory Boulevard, Cane Ridge, TN 37013.

2.      Defendant, Nationwide, is a for-profit foreign insurance company authorized to engage in, and does engage in, the sale and delivery of property insurance within the State of Tennessee with its principle place of business located at One Nationwide Plaza, Columbus, OH 43215.  The registered agent for service of process of Nationwide is the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Nashville, TN 37243.

3.      Plaintiffs' claim for relief arises from a covered loss to their property located at 14087 Old Hickory Boulevard, Cane Ridge, TN 37013 ("Property").  Venue is proper pursuant to Tenn. Code Ann. § 20-4-103.

4.      At all times material hereto, Plaintiffs have been the owners of the Property.

1

5. Plaintiffs originally purchased homeowners' insurance with the Defendant in approximately 1988. Each year, Plaintiffs renewed or procured a policy of homeowners' insurance ("Policy"), from Defendant covering the above-referenced Property up through and including March 26, 2013. A copy of the certified Policy is attached as Exhibit 1.

6. In consideration of monies paid by Plaintiffs to Defendant, the Policy was issued, insuring the Plaintiffs' Property against risks, including sinkholes. The insurance policy provided dwelling insurance coverage in the amount of $444.000.00, in addition to other coverages.

7. Plaintiffs have renewed the Policy each and every year and have paid all premiums due thereunder and otherwise met all conditions of coverage thereunder for nearly thirty (30) years.

8. On or about June 15, 2013, while the Policy was in full force and effect, the Property was damaged including but not limited to, cracking in the foundation blocks of the home, cracking and separation in the interior of the home, as well as cracking in the driveway and sidewalk.

9. The damage to Plaintiffs' Property is caused by a covered peril under the Policy.

10. A notice of loss and damage was properly given by Plaintiffs to Defendant in accordance with the terms of the Policy.

11. On or about September 7, 2013, Defendant sent Geotek Engineering ("Geotek") to Plaintiffs' Property who completed a written report dated October 4, 2013.

12. During this initial visit Geotek representatives walked around the exterior and interior of the home and entered the crawlspace, where they "probed the soil in several areas". Despite noting "some small sinkholes" located "[a]bout 150 to 400 feet from the house", Geotek completed no further testing prior to concluding summarily that "we are reasonably certain that

2

sinkhole activity did <u>not</u>[1] cause the distress observed at the LaQuiere home."

13.     Almost two years following Geotek's initial visit to the Plaintiffs' Property, the Plaintiffs observed additional likely sinkhole activity and resulting damage to their home.

14.     After requests for further review, in late 2015, Nationwide finally retained Geotek to perform a re-assessment of the damage to the LaQuiere's home, but only after they were forced to hire a Public Adjuster to assist in their claim.

15.     This reassessment resulted in a second report by Geotek, dated December 21, 2015 and did include subsurface exploration.

16.     However, the second Geotek report appears designed to bolster and provide support for the conclusions summarily made in the earlier Geotek report and denies the earlier findings of sinkholes, instead stating that these were "small shallow depressions in the farm-field," while intentionally or negligently failing to include information of public record of nearby sinkholes, and a cave system of mapped passages leading in the direction of and possibly under the Property.

17.     While denying that the damage to the house was related to sinkhole activity, the Geotek Report fails to identify the cause of the damage and instead lists several possibilities with no conclusive finding.

18.     On or about January 14, 2016, Defendant advised Plaintiffs, that it was denying coverage under the Policy based on the report of Geotek.  A copy of the denial letter sent by Defendant is attached as <u>Exhibit 2</u> without attachments.

19.     On or about May 6, 2016, Plaintiffs, through counsel, sent a request that the full amount be paid or that Plaintiffs would seek a bad faith penalty for the handling of their claim. The correspondence also addressed several causes of concern including the fact that the Geotek

---

[1] (Underlining in original.)

3

Report failed to identify the open and obvious sinkholes in the yard at the Property. A copy of this correspondence is attached as Exhibit 3.

20.    More than 60 days has passed since the Plaintiffs demanded payment and as of the date of this filing, there has been no indication from Defendant that the claim will be paid and no payment has been made on the claim.

21.    Plaintiffs have complied fully with all of the provisions of the Policy, but Defendant has declined or refused to make payment to Plaintiffs for the loss and damage sustained.

22.    Plaintiffs have been required to retain the services of the undersigned counsel and is obligated to pay them a reasonable fee for their services.

## BREACH OF CONTRACT

23.    Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 22 above as though fully set forth herein.

24.    Defendant has breached the Policy by denying coverage and failing and refusing to pay all benefits due thereunder for the claim.

25.    Defendant failed to properly investigate the Property as required under the Policy and by state statute.

26.    Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of this claim.

27.    Defendant failed to investigate the Plaintiffs' claim in a prompt and thorough manner.

28.    Defendant intentionally ignored repeated requests to reconsider its wrongful denial of insurance coverage for the Plaintiffs' claim.

29.    Defendant represented to its insured that exclusionary language contained in the Policy excluded coverage of the claim, when the Defendant knew or should have known that it did

4

not exclude coverage for the type of loss incurred. Such acts or omissions were committed intentionally, recklessly, and/or negligently.

30. Defendant owes Plaintiffs prejudgment interest, expert fees, costs, the costs of all structurally necessary repairs, and, if the home is not repairable within applicable coverage limits, an amount equal to such limits for the total constructive loss as well as a return of all premiums paid for the Policy.

## VIOLATIONS OF THE TENNESSEE SINKHOLE STATUTE

31. Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 30 above as though fully set forth herein.

32. Defendant has violated the Tennessee Sinkhole Statute ("Sinkhole Statute"), Tennessee Code Annotated section 56-7-130, when Defendant had an obligation to comply with the Sinkhole Statute.

33. The Defendant's acts and/or omissions in violation of the Sinkhole Statute include but are not limited to: failing to conduct an investigation as required under the Sinkhole Statute, failing to investigate other properties as required under the Sinkhole Statute, and ignoring damages that are consistent with sinkhole activity. The Plaintiffs are homeowners in the state of Tennessee, are within the protection of the Sinkhole Statute, and are intended to benefit from this law.

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

34. Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 33 above as though fully set forth herein.

35. Defendant has breached the covenant of good faith and fair dealing that is a part of the Policy that it made with the Plaintiffs.

36. Defendant has evaded the spirit of the bargain with the Plaintiffs, has shown a lack of diligence and slacking off with regards to the investigation of the claim and performing under

5

the Policy, and has willfully rendered imperfect performance under the Policy.

## UNFAIR CLAIMS PRACTICES

37.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 36 above as though fully set forth herein.

38.     Defendant committed unfair claims practices in violation of Tenn. Code Ann. §§ 56-8-101 through 56-8-111, including, but not limited to:

(A)     Failing to make a good faith attempt to effect prompt, fair, and equitable payment of Plaintiffs' claim, in violation of Tenn. Code Ann. § 56-8-105; and

(B)     Knowingly misrepresenting relevant policy provisions relating to coverages at issue in violation of Tenn. Code Ann. § 56-8-105.

39.     The Defendant's acts and/or omissions regarding this claim were made willfully or knowingly and supports Plaintiffs' claim for breach of contract and bad faith.

## NEGLIGENCE *PER SE*

40.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 39 above as though fully set forth herein.

41.     Defendant failed to follow the minimum standards for investigating a sinkhole claim as set forth in Tenn. Code Ann. § 56-7-130 (d), including those described above and including that:

(A)     Defendant ignored its own investigation that found sinkholes near the Plaintiffs' house and denied coverage without conducting no additional subsurface investigation; and,

(B)     Defendant ignored additional requests by the Plaintiffs for actual testing and Defendant failed to conduct analysis of sufficient scope to eliminate sinkhole activity as the cause of the damage as required under Tenn. Code Ann. § 56-7-130 (d)(2).

6

42.     As a result of Defendant's failure to perform its statutory duty, Plaintiffs have been injured. Plaintiffs were within the protection of the Tenn. Code Ann. § 56-7-130 and were intended to benefit from these laws.

## BAD FAITH

43.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 42 above as though fully set forth herein.

44.     Defendant's failure and refusal to pay is not in good faith, and such failure to pay has inflicted expense, loss, and injury upon Plaintiffs. Accordingly, Plaintiffs are entitled to recover, in addition to the amount of the insured loss and interest thereon, an amount equal to twenty-five percent (25%) of the liability for the loss, pursuant to Tenn. Code Ann. § 56-7-105.

45.     The acts and/or omissions of Defendant constitute bad faith with respect to the exercise of its duties and obligations to the Plaintiffs, including, but not limited to:

(A)     Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of insurance claims;

(B)     Defendant failed to investigate the Plaintiffs' claims in a prompt and thorough manner; and,

(C)     Defendant intentionally ignored requests to pay the claim of insurance policy coverage for the Plaintiffs' claims.

Such acts or omissions were committed intentionally, recklessly and negligently.

46.     Nationwide has exhibited a pattern of conduct with regard to its claims handling practices, which has resulted in repeated misconduct amounting to intentional or reckless bad faith toward its insureds. A history of court determinations and complaints of bad faith conduct on the part of Nationwide has put Nationwide on notice that its claims handling practices have resulted in repeated incidents of bad faith. In spite of such notice, Nationwide has intentionally or

7

recklessly or carelessly failed to correct its corporate policies or otherwise train its personnel in such a manner as to reduce or eliminate the misconduct.

WHEREFORE, Plaintiffs respectfully request the Court to enter judgment against Defendant for (i) actual damages; (ii) costs, including expert fees; (iii) reasonable attorneys' fees; (iv) all general and special damages, including but not limited to the full cost of repair or replacement of Plaintiffs' home; (v) pre-judgment interest; and (vi) any other relief as the Court deems just and appropriate. Plaintiffs pray for all relief and damages to which they are entitled under the common law, the Sinkhole Statute, and state law, including discretionary costs, court costs, compensatory damages, in an amount in excess of the $25,000.00 jurisdictional amount.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury of twelve (12) persons to try all issues so triable in this matter and such further and general relief to which they may be entitled.

Respectfully submitted,

Sonya S. Wright (BPR 023898)
Farrar | Wright, PLLC
122 North Church Street
Murfreesboro, Tennessee 37130
(615) 800-4747, phone
(615) 900-3473, facsimile
sonya@farrarwright.com

*Attorney for Plaintiffs*